IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LISA C. CONE, attorney in fact and next friend of
TIMOTHY H.L. FRAZIER, and TIMOTHY H.L.
FRAZIER, individually,

    Plaintiffs,

v.                                                                                        No. 14-1122

HANKOOK TIRE COMPANY, LTD.,

    Defendants.
_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E. 202)
_____

Plaintiffs, Lisa Cone and Timothy H.L. Frazier, brought this action against Defendant, Hankook Tire Company, Limited ("Hankook"), alleging violations of the Tennessee Products Liability Act ("TPLA" or "Act"). (Docket Entry ("D.E.") 1.) As a basis for these claims, Plaintiffs allege that Hankook manufactured a tire that suffered a tread separation, causing Frazier to lose control of a concrete mixer truck he was driving. The resulting crash caused Frazier to suffer serious injuries. Currently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

I. LOCAL RULE VIOLATIONS

Prior to addressing the substance of the instant motion, the Court deems it necessary to note Plaintiffs' noncompliance with the Local Rules of this district concerning motions for summary judgment. The Local Rules require that "[m]emoranda in opposition to motions for summary judgment shall not exceed 20 pages without prior Court approval." LR 56.1(b). Cone

and Frazier's response ran twenty-nine pages despite the fact that a search of the docket revealed no request to exceed the page limitation. The same Local Rule further mandates that

> [a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) agreeing that the fact is undisputed;
>
> (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
> (3) demonstrating that the fact is disputed.

Local R. W.D. Tenn. 56.1(b). Cone and Frazier did not file a response to Hankook's statement of undisputed facts. "Failure to respond to a moving party's statement of material facts . . . within the time periods provided by [the Local Rules], shall indicate that the asserted facts are not disputed for purposes of summary judgment." Local R. W.D. Tenn. 56.1(d).

Plaintiffs have made a habit of disregarding the Local Rules. *See* (D.E. 242 at PageID 8492 n.1 (noting that they failed to comply with Rule 56.1(b) when responding to Defendant's statement of undisputed facts relevant to another motion); (D.E. 243 at PageID 8500) (pointing out that they violated Rule 56.1(a) by not including a statement of undisputed facts in their motion for partial summary judgment). Given the close proximity to trial, the Court will not strike Plaintiffs' response to the motion for summary judgment. However, due to their failure to respond to Defendant's statement of undisputed facts, those facts will be deemed admitted for purposes of ruling on this motion to the extent they are supported by the record. Further failures of this nature will result in the non-compliant pleadings being stricken from the record.

## II. BACKGROUND

The tire at the center of this dispute is a Hankook AH10 medium truck tire that was manufactured by Hankook Korea in Daejeon, Korea in December 2005. (D.E. 202-37 at PageID

3655.) When the tire left Defendant's control, it complied with the applicable Federal Motor Vehicle Safety Standards ("FMVSS"). (D.E. 209 at PageID 4602.)

On the date of the crash—July 8, 2013—Frazier was driving a 1996 International Model 2574 concrete mixer. (D.E. 202-11 at PageID 3121.) That truck had previously sustained front-end damage in an accident that took place in February 2002. (D.E. 202-13 at PageID 3123.) Repairs were required to "straighten out [the] front frame section." (*Id.*) An October 14, 2002 inspection report noted that the "left front steer tire leaks," (D.E. 202-14 at PageID 3124), and a 2006 report recorded that "the truck lean[ed] hard to the left when loaded" (D.E. 202-16 at PageID 3126). In July 2013, it had been five years since the vehicle underwent a Department of Transportation ("DOT") inspection. (D.E. 202-17 at PageID 3127 & D.E. 202-18 at PageID 3128.) Also, in 2010, the last year for which there was a record, the front tire pressures were recorded as 100 psi, slightly below the recommended 110 psi. (D.E. 292-19 at PageID 3143 & D.E. 202-20 at PageID 3145.)

The concrete mixer sat unused for long periods of time between 1998 and 2013—the truck was not in use from March 2004 through May 2010 and again from May 2011 through May 2013. (D.E. 202-35 at PageID 3642.) During these times, the truck sat in a gravel yard, unprotected from the elements, with all its weight on the tires. (D.E. 202-26 at PageID 3221-22.) It was driven approximately 1,250 miles between January 2007 and the July 8, 2013 accident. (*See* D.E. 202-27 at PageID 3233 & D.E. 202-28 at PageID 3241.)

The parties offer competing theories for the cause of the tire's failure. Hankook's tire failure analysis expert, Joseph Grant, opined that the tire failed as a result of "a localized road hazard impact injury . . . and operation of the tire after the injury." (D.E. 202-10 at PageID 3115.) He further concluded that poor storage and usage conditions contributed to the failure.

3

(*Id.*)  Plaintiffs' experts, Troy Cottles and David Southwell, each identified alleged manufacturing defects, which they opined caused the tire's tread separation and failure.  (D.E. 202-9 at PageID 3070; D.E. 202-29 at PageID 3284.)  In his deposition, Cottles testified that the tire's tread depth was adequate and that the tire still had serviceable life.  (D.E. 231-1 at PageID 7838.)  Additionally, the experts concluded that the failure was not attributable to an impact, over-loading, over or under-inflation, or service conditions.  (D.E. 231-2 at PageID 7949-50 & D.E. 231-6 at PageID 8158.)

Hankook has moved for summary judgment on Plaintiffs' claims for design defect, manufacturing defect, failure to warn, breach of warranty, and post-sale duty to warn, as well as their request for punitive damages.  Cone and Frazier indicated in their response that they are no longer pursuing claims based upon design defect, breach of warranty, and post-sale duty to warn.  Thus, Defendant's motion is GRANTED with respect to those claims, and the Court's analysis will be focused on the manufacturing defect and failure to warn claims and the demand for punitive damages.

### III. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view all evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in the nonmoving party's favor. *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015).  "There is a genuine issue of material fact only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).  "The test is

whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 251-52) (internal quotation marks omitted). The moving party must initially show the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). It is then incumbent upon the nonmoving party to "present significant probative evidence to do more than show that there is some metaphysical doubt as to the material facts to defeat the motion." *Id.* (internal quotation marks omitted).

IV. ANALYSIS

In cases based upon diversity, federal courts apply the law of the state in which the action is brought. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Tenn. 2006). Plaintiffs' claims against Defendant fall under the purview of the TPLA, codified at Tennessee Code Annotated sections 29-28-101 to -108. The Act defines a product liability claim as any action:

> brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

Tenn. Code Ann. § 29-28-102(6). An action may be maintained under the statute against "a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition." Tenn. Code Ann. § 29-28-103(a); *Lake v. Memphis Landsmen, LLC*, No. W2011-00660-COA-RM-CV, 2014 WL 895519, at *8 (Tenn. Ct. App. Mar. 7, 2014). Because the statute is interpreted in the disjunctive, "a plaintiff may establish

5

either that the product was defective or unreasonably dangerous at the time the product left the control of the manufacturer." *Fulton v. Pfizer Hosp. Prods. Group, Inc.*, 872 S.W.2d 908, 911 n.1 (Tenn. Ct. App. 1993), *app. denied* (Feb. 28, 1994). Generally, the question of whether a product is defective or unreasonably dangerous is for the jury to decide. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 484 (6th Cir. 2008), *reh'g & reh'g en banc denied* (Dec. 1, 2008).

"Defective condition" is defined under the TPLA as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). "A defect in a product may be proven by direct evidence, circumstantial evidence, or a combination of both." *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 299 (Tenn. Ct. App. 1995); *app. denied* (May 30, 1995); *see also Johnson v. Wal-Mart Stores East, LP*, No. 3:11-CV-469, 2013 WL 3168591, at *4 (E.D. Tenn. June 20, 2013). "[T]he failure or malfunction of the device, without more, will not make the defendant liable. A plaintiff must show that there was something wrong with the product, and trace the plaintiff's injury to the specific defect." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) (internal citations omitted), *app. denied* (Nov. 6, 2000 & July 9, 2001). Moreover, the "fact that a plaintiff is injured is not proof of a defect in the product." *Id.* Nor is it sufficient to "show that the product caused the plaintiff's injury or was involved in it." *Shoemake v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 573 (Tenn. Ct. App. 2003), *app. denied* (June 14, 2004). The plaintiff bears the burden of identifying a defect in the product. *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1051 (E.D. Tenn. 2007).

"Unreasonably dangerous" means

> that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its

dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102(8).

The statute provides two tests to determine whether a product is unreasonably dangerous—the consumer-expectation test and the prudent-manufacturer test. *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 392 (6th Cir. 2013). Under the first, following the statutory language, "a product is deemed unreasonably dangerous if it would be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* (quoting *Ray v. BIC Corp.*, 925 S.W.2d 527, 530 (Tenn. 1996)) (internal quotation marks omitted). The focus of this test is "the consumer's understanding and appreciation of the dangers associated with use of the product." *Krumpelback v. Breg, Inc.*, 491 F. App'x 713, 719 (6th Cir. 2012). In contrast to the "seller oriented" prudent-manufacturer test, this test is "buyer oriented." *Griffin v. Navistar Inc.*, No. 2:08-cv-02283, 2010 WL 2734043, at *3 (W.D. Tenn. July 8, 2010). "Under this test, a product is not unreasonably dangerous if the ordinary consumer would appreciate the condition of the product and the risk of injury." *Id.* The plaintiff must submit admissible evidence that "the ordinary consumer has an expectation regarding the safety of the product, as well as what that expectation is and why the [product] was dangerous beyond that expectation." *Id.* at *4.

The prudent-manufacturer test "requires proof about the reasonableness of the manufacturer['s] . . . decision to market a product assuming knowledge of its dangerous condition." *Brown v. Raymond Corp.*, 318 F. Supp. 2d 591, 596 (W.D. Tenn. 2004) (alteration in original) (quoting *Ray*, 925 S.W.2d at 531). While the two tests are not mutually exclusive, "the prudent[-]manufacturer test will often be the only appropriate means for establishing the

7

unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation." *Id.* (quoting *Ray*, 925 S.W.2d at 531). A plaintiff "must offer expert testimony about the prudence of the decision to market when the prudent-manufacturer test applies." *Brown v. Raymond Corp.*, 432 F.3d 640, 644 (6th Cir. 2005) (internal quotation marks omitted). The Tennessee Supreme Court has held that a tire is not complex "for the purpose[] of considering the utility of the consumer expectations test." *Tatham v. Bridgestone Am. Holding*, 473 S.W.3d 734, 751 (Tenn. 2015).

"[I]n order to recover under the TPLA, a plaintiff must [also] show that the product manufactured and sold by the defendant caused the injuries he alleges to have sustained." *Strayhorn*, 737 F.3d at 404 (quoting *Richardson*, 412 F. Supp. 2d at 868) (internal alterations omitted). The issue of proximate cause is generally one for the jury to determine "unless the facts and the inferences to be drawn therefrom are beyond all reasonable dispute." *Frausto v. Cooper Tire & Rubber Co.*, No. 3-12-0761, 2014 WL 581724, at *2 (M.D. Tenn. Feb. 13, 2014).

### A. Manufacturing Defects

Hankook's argument that summary judgment is appropriate for Plaintiffs' manufacturing defect claims is grounded in its disagreements with the opinions offered by Cottles and Southwell. This Court outlined those opinions in an order denying in part and granting in part Defendant's motions to exclude the testimony of Cottles and Southwell. (D.E. 268.) It is not necessary to re-analyze their opinions in detail to resolve the issue presented. Briefly, Southwell opined that the tire's tread separation was caused by distorted belt cords, insufficient gauge of the belt skim coat, reduced component adhesion, and substantial belt misalignments. (*Id.* at PageID 9109.) The Court excluded his opinion on the gauge of the belt skim coat on the basis that it was not supported by reliable evidence. (*Id.* at PageID 9112-14.) However, the Court

determined that his remaining three defect theories were supported by reliable evidence, and Hankook's motion was denied with respect to those opinions. (*Id.* at PageID 9125.) Cottles offered his opinion that the tread separation was caused by inadequate bonding, oxidative degradation, and belt defects. (*Id.* at PageID 9118.) The Court denied Defendant's motion to exclude Cottles's opinions in its entirety. (*Id.* at PageID 9125.)

Defendant produced its own expert, who found that the tire's failure was not caused by manufacturing defects. There is also evidence in the record that the tire may have been subjected to improper maintenance and storage. However, those facts do not negate Cone and Frazier's evidence. Rather, they create triable issues of fact. There is ample evidence from which the jury could conclude that the tire was either in a defective condition or was unreasonably dangerous and that its failure caused the accident and Frazier's injuries. Cottles and Southwell each posited that the tire showed signs of several manufacturing defects. Those experts also ruled out other causes for the tire's failure. Further, the tire had adequate tread depth, thus allowing for the inference that Frazier would expect it to continue to be operational and not suffer a catastrophic failure. Hankook also contends that Plaintiffs cannot show a defect because they do not allege that the tire differed from its specifications in any way. However, Defendant's own expert opined that it was not necessary to review a tire's specifications in order to render a reliable opinion on how the tire was manufactured. (*See* D.E. 231-3 at PageID 8014.)

Discrepancies in the proof must be resolved by the jury, not this Court. *See Frausto*, 2014 WL 581724, at *2 (noting difference of opinion between parties came down to "battle of the experts" and made summary judgment on claim that tire had manufacturing defect inappropriate). Accordingly, Defendant's motion for summary judgment on the manufacturing defect claim is DENIED.

B. <u>Failure to Warn</u>

In Tennessee, inadequate warnings may make a product defective or unreasonably dangerous. *Payne v. Novartis Pharm. Corp.*, 967 F. Supp. 2d 1223, 1229 (E.D. Tenn. 2013). To establish product liability on a failure to warn theory, the plaintiff must demonstrate that "(1) the warnings at issue were defective; (2) the defective warning made the product unreasonably dangerous; and (3) the inadequate labeling proximately caused the claimed injury." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 F. Supp. 2d 1101, 1127 (M.D. Tenn. 2009) (citing *Barnes v. Kerr Corp.*, 418 F.3d 583, 590 (6th Cir. 2005)), *aff'd on other grounds* 432 F. App'x 435 (6th Cir. 2011), *cert. denied* 132 S. Ct. 1135 (2012). Courts considering the adequacy of manufacturers' warnings take into account "(1) whether the warning adequately indicates the scope of the danger; (2) whether it communicates the seriousness of the harm that could result from misuse; (3) whether the physical aspects of the warning alert a reasonably prudent person to the danger; and (4) the means used to convey the warning." *Id.* (citing *Barnes*, 418 F.3d at 590). This standard has been described as "fairly stiff." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991); *Payne*, 967 F. Supp. 2d at 1229. However, "[a] product is not unreasonably dangerous because of a failure to adequately warn of a danger or hazard that is apparent to the ordinary user." Tenn. Code Ann. § 29-28-105(d).

Hankook contends that Plaintiffs have not provided expert testimony or pointed to any evidence in the record to support its failure to warn claim. First, given that the consumer expectation test is applicable to products liability cases involving tires, expert testimony is not required to establish Plaintiffs' failure to warn claims. *See Bradley v. Ameristep, Inc.*, 800 F.3d 205, 213 (6th Cir. 2005) (citing *Jackson v. General Motors Corp.*, 60 S.W.3d 800, 805-06 (Tenn. 2001)). Therefore, the fact that Cone and Frazier have not offered an expert opinion in this

respect is not fatal to their claim. Nonetheless, the Court ultimately agrees with Hankook that Plaintiffs have failed to identify any evidence in the record that supports their failure to warn claim.

In their responsive pleading, Cone and Frazier recite the applicable law underlying failure to warn claims, but they provide no substantive analysis of any evidence in the record that would support this assertion. Indeed, the section of their response dedicated to this issue contains no citations to the record whatsoever. Further, they do not specify the nature of their contention, saying only that their "claim for failure to warn relates to the danger of tread separations in general, as well as the danger of internal oxidation." (D.E. 231 at PageID 7817.) Plaintiffs assert that "the jury is entitled to examine the scope of the potential danger from the defective tire, and the potential harm from a tread separation failure, and decide if Hankook should have warned its consumers of these dangers." (*Id.*) From their response, it is unclear whether they are asserting that no warning was given or that the warning was simply inadequate. Plaintiffs have, quite simply, not pointed to anything in the record that is relevant to this claim. "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agirstor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Cone and Frazier's conclusory allegations are insufficient to survive Hankook's motion for summary judgment on this issue, and the motion is therefore GRANTED.

C. Punitive Damages

Hankook asserts that punitive damages are barred in this action pursuant to Tennessee Code Annotated section 29-28-104(b) because the subject tire "complied with applicable

regulations governing tires, including [FMVSS 119], located at 49 C.F.R. § 571.119." (D.E. 202-1 at PageID 2744.) Plaintiffs respond that the statute's protection does not apply because FMVSS 119 was insufficient to ensure the safety of consumers. (D.E. 231 at PageID 7819.)

Generally, under Tennessee law, a court may award punitive damages if the plaintiff demonstrates by clear and convincing evidence that the defendant acted intentionally, fraudulently, maliciously, or recklessly. Tenn. Code Ann. § 29-39-104(a)(1); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Hodges*, 833 S.W.2d at 901. (internal citations omitted). Evidence is clear and convincing when it leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* at n.3. With respect to product liability actions, Tennessee Code Annotated section 29-28-104(b) provides in pertinent part that

> (b) [a] manufacturer . . . shall not be liable for exemplary or punitive damages if:
> 
> . . . .
> 
> (2) The product was in compliance with a statute of the state or the United States, or a standard, rule, regulation, order, or other action of a government agency pursuant to statutory authority, when such statute or agency action is relevant to the event or risk allegedly causing the harm and the product was in compliance at the time the product left the control of the manufacturer . . . .

Plaintiffs cite *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 536 (Tenn. 2008), for the proposition that 29-28-104 "was not designed to provide immunity from punitive damages to a manufacturer who is aware that compliance with a regulation is insufficient to protect users of the product." According to Cone and Frazier, Cottles has offered testimony that the federal standards relied upon by Hankook are outdated and inadequate to protect consumers. Thus, they conclude, the statute's protection does not apply.

In *Flax*, the defendant argued that its compliance with federal regulations should bar the recovery of punitive damages. 272 S.W.2d at 536. The Tennessee Supreme Court acknowledged that, pursuant to what is now section 29-28-104(a), there was a rebuttable presumption that its product was not unreasonably dangerous because it complied with applicable government standards. But, the court also found that presumption had been rebutted and that, "[w]hile evidence of compliance with government regulations [was] certainly evidence that a manufacturer was not reckless, it [was] not dispositive." *Id.* However, at the time *Flax* was decided—2008—the statute did not contain subsection (b), which Hankook relies upon in support of its argument that punitive damages are inappropriate.

Section 29-28-104 was amended as part of the Civil Justice Act of 2011 to add subsection (b). *See* 2011 Tenn. Pub. Acts 510, sec. 24 ("Section 29-28-104[] is amended by designating the existing language as subsection (a) and by adding the following new subsection (b)[.]") The *Flax* court was interpreting what is now subsection (a), which creates a rebuttable presumption that a product is not unreasonably dangerous if a defendant proves compliance with regulations.[1]

---

[1] Subsection (a) states that

[c]ompliance by a manufacturer . . . with any federal or state statute or administrative regulation existing at the time a product was manufactured and

Tenn. Code Ann. § 29-28-104(a). Unlike subsection (a), subsection (b) does not create a rebuttable presumption. Rather, subsection (b) states that a manufacturer "*shall not be liable*" for punitive damages if the product was in compliance with a regulation that is "relevant to the event or risk allegedly causing the harm" at the time it left the manufacturer's control. *See* Tenn. Code Ann. § 29-28-104(b) (emphasis added). Thus, the legislature's adoption of subsection (b) in 2011 created a bright line rule with respect to compliance with government regulations and punitive damages, essentially overruling *Flax* in that regard. *Cf. Grant v. Kia Motors Corp.*, 185 F. Supp. 3d 1033, 1052 (E.D. Tenn. 2016) (finding punitive damages were barred pursuant to section 29-39-104(e), a statute with similar language to section 29-28-104(b) but that applies to drugs or devices, because product complied with federal standards and noting that *Flax* had been overruled in that respect).

49 C.F.R. § 571.119 "establishes performance and marking requirements for tires" and states that its purpose "is to provide safe operational performance levels for tires used on motor vehicles . . . ." According to declarations filed by Hankook's expert, Grant, and a Hankook employee, Yun-Chang Chun, the subject tire complied with FMVSS 119 at the time it left Hankook's manufacturing facility. (D.E. 202-3 & D.E. 203.) Plaintiffs do not contest these facts and do not assert that FMVSS 119 is inapplicable to the subject tire. These facts establish that the tire complied with the standard, and punitive damages are therefore barred pursuant to section 29-28-104(b). Defendant's motion for summary judgment on this ground is GRANTED.

---

> prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards.

Tenn. Code Ann. § 29-28-104(a).

## V.  CONCLUSION

Based upon the foregoing and the record as a whole, Defendant's motion for summary judgment is DENIED with respect to Plaintiffs' manufacturing defect claim and GRANTED with respect to its failure to warn and punitive damages claims.

**IT IS SO ORDERED** this 23rd day of January 2017.

s/ J. DANIEL BREEN  
CHIEF UNITED STATES DISTRICT JUDGE