IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

LISA C. CONE, attorney in fact and next friend of
TIMOTHY H.L. FRAZIER, and TIMOTHY H.L.
FRAZIER, individually,

    Plaintiffs,

v.                                                  No. 14-1122

HANKOOK TIRE COMPANY, LTD.,

    Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT &
TO EXCLUDE EVIDENCE OF UNDISCOUNTED MEDICAL BILLS (D.E. 196)
_____

       Plaintiffs, Lisa C. Cone and Timothy H.L. Frazier, brought this action against Defendant, Hankook Tire Company, Limited ("Hankook"), alleging violations of the Tennessee Products Liability Act. (Docket Entry ("D.E.") 1.) As a basis for these claims, Plaintiffs allege that Hankook manufactured a tire that suffered a tread separation, causing Frazier to lose control of a concrete mixer truck he was driving. The resulting crash caused Frazier to suffer serious injuries. Currently before the Court is Defendant's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 regarding the proper measure of compensatory damages. (D.E. 196.) Plaintiffs filed a response, (D.E. 210), to which Defendant's filed a reply, (D.E. 228), making the matter ripe for disposition.

       It is undisputed that Frazier is a quadriplegic, is dependent in all activities of daily living, requires twenty-four-hour care, and will remain so dependent for the remainder of his life. (D.E. 198.) The parties' experts opined that Frazier's post-accident life expectancy is between 13.3

and 14.1 years. (*Id.*) Plaintiffs, however, assert that Frazier's life expectancy could be as long as twenty-eight years based on the United States Life Tables ("mortality tables"). (D.E. 211 at PageID 4750.) Plaintiffs have submitted a life care plan that calculates the cost of having a caretaker provide the entirety of Frazier's household services, including, but not limited to, cooking, cleaning, preparing meals, and yard work. (D.E. 198.)

In the instant motion, Hankook argues that any award of damages for Frazier's life care plan should be based on his post-accident life expectancy, approximately 13.3 to 14.1 years, rather than his pre-accident life expectancy, twenty-eight years. (D.E. 196 at PageID 1819.) Further, Defendant contends that Plaintiffs should not recover damages for the loss of Frazier's own household services to himself because those damages would be duplicative of costs included in his life care plans. (*Id.*) Hankook avers that personal consumption expenditures, which are included in the life care plan, must be deducted when measuring lost future earnings. (*Id.* at PageID 1819.) Finally, Defendant submits that damages for past medical expenses should be based on the amounts actually paid to providers rather than the amounts charged by them. (*Id.*)

## I. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in the nonmoving party's favor. *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). "There is a genuine issue of material fact only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). "The test is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 251-52) (internal quotation marks omitted). The moving party must initially show the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). It is then incumbent upon the nonmoving party to "present significant probative evidence to do more than show that there is some metaphysical doubt as to the material facts to defeat the motion." *Id.* (internal quotation marks omitted).

## II. ANALYSIS

Plaintiffs seek compensatory damages for Frazier's past and future medical care, the loss of household services to himself, and lost future earnings. The primary purpose of compensatory damages is to make the plaintiff whole. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 902 (Tenn. 1992). The party seeking damages has the burden of proving them. *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). Proof of damages need not be mathematically precise but must be "as certain as the nature of the case permits and must enable the trier of fact to make a fair and reasonable assessment of the damages." *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 703 (Tenn. 1999). The award of damages is "left to the sound discretion of the trier of fact." *Id.*

A. <u>Life Expectancy</u>

Plaintiffs' expert, Dr. Howard Katz, estimated Frazier's post-accident life expectancy at 14.1 years as of February 13, 2015. (D.E. 196-2 at PageID 1854.) Hankook's expert, Dr. Michael DeVivo, estimated his post-accident life expectancy at 13.3 years as of September 15, 2015. (D.E. 196-3 at PageID 1872.) The life care plan presented by Plaintiffs calculated

3

damages for two alternative scenarios: one based on a life expectancy of twenty-eight years and another based on a life expectancy of 12.9 years.[1] (D.E. 196-6 at PageID 2227.)

Cone and Frazier contend that a question of fact exists regarding Frazier's life expectancy. They point out that twenty-eight years is the statistical life expectancy for individuals of Frazier's age, sex, and race pursuant to the mortality tables. (D.E. 210-1 at PageID 4625.) They acknowledge that the parties' experts, taking into account Frazier's spinal cord injury, estimated his life expectancy was between 13.3 and 14.1 years. (*Id.*) But, according to Plaintiffs, "[r]ecent studies have recognized that the life expectancy is increasing for persons with [] spinal cord injur[ies]." (*Id.*) Further, Plaintiffs note that Dr. Katz stated it was possible Frazier could live longer than 14.1 years. (D.E. 210-3 at PageID 4702-03.) Thus, they argue that summary judgment is inappropriate because a question of fact exists as to how Frazier's various health conditions will affect his life expectancy. (D.E. 210-1 at PageID 4625.)

"In order to establish a claim for future medical expenses, [a] plaintiff must show that additional medical treatment is 'reasonably certain to be required in the future.'" *Palanki v. Vanderbilt Univ.*, 215 S.W.3d 380, 391 (Tenn. Ct. App. 2006) (quoting *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *14 (Tenn. Ct. App. Jan. 28, 2002). The "'reasonable certainty' standard requires more than a mere likelihood or possibility." *Id.* (quoting *Henley*, 2002 WL 100402, at *14.)

Plaintiffs rely upon *Hall v. Stewart*, No. W2005-02948-COA-R3-CV, 2007 WL 258406, at *6 (Tenn. Ct. App. Jan. 31, 2007), in support of their argument that the jury should be

---

[1] This number is slightly lower than the life expectancy estimated by the experts because it reflects Frazier's life expectancy at the time the life care plan was made.

presented with a life-expectancy figure from the mortality tables, along with Tennessee Pattern Jury Instruction 14.53, which provides,

> The life expectancy read to you is not conclusive but is an average life expectancy of persons who have reached a certain age. You should be aware that many persons live longer, and many die sooner, than the average. This figure may be considered by you in connection with other evidence relating to the probable life expectancy of the Plaintiff, including evidence of his health, occupation, habits, and other activities.

However, *Hall* was a wrongful death case wherein defendant's sought to introduce evidence that the decedent's pre-existing conditions necessitated a downward departure from the statistical life expectancy reflected in the mortality tables. 2007 WL 258406, at *5. In *Hall*, the court noted that "[l]ife expectancy predictions are anything but certain, but the [mortality] tables still offer a means by which a jury might calculate reasonable *wrongful death damages*." *Id.* at *6 (emphasis added).

The issue presently before the Court is very different than that presented in *Hall*. Here, Plaintiffs are seeking damages pursuant to a life care plan, which was created to estimate the cost of care Frazier will require for the rest of his life based on his injuries. Of course, Plaintiffs are correct that Frazier's life could exceed the 14.1 year expectancy, just as the life span of a healthy individual of the same age, sex, and race could exceed twenty-eight years. However, as Dr. Katz—Plaintiffs' expert—stated, "Life expectancy is what we -- what we can best estimate his life to be. And it's what has traditionally been used in courts for estimating how long -- how costs are going to work . . . ." (D.E. 196-4 at PageID 1981-82.) The Court agrees that it would be improper for the jury to base an award on a life expectancy that both experts agree does not apply to Frazier. Thus, Plaintiffs' life care plan damages must be based upon his current, post-

injury life expectancy, in accordance with the experts' opinions. Defendant's motion is GRANTED on this issue.

B. Household Services

Dr. George H. Carter, Plaintiffs' economist, has estimated that they are entitled to recover $249,939 in damages for the loss of Frazier's household services to himself. (D.E. 210-5 at PageID 4721.) According to Dr. Carter, "[h]ousehold service losses represent the value of replacing the previously uncompensated activities necessary for daily life." (*Id.* at PageID 4712.) He defined these services as "household chores, shopping, fixing things, etc." (*Id.* at PageID 4721.) However, according to Defendant, Frazier's life care plan includes the cost of having another person provide twenty-four hour in-home care. (D.E. 196-9 at PageID 2374.) Thus, Hankook contends, allowing damages in both categories would be duplicative.

In response, Plaintiffs point to Dr. Carter's opinion that damages for loss of household services and expenses provided for in the life care plan are not the same. Dr. Carter testified that a life care plan measures the costs that will be incurred to maintain Frazier in a "subsistent state." (D.E. 210-6 at PageID 4733.) In contrast, he said that household services related to things that he could previously do for himself but was no longer capable of completing due to his injuries, such as preparing food and cleaning up. (*Id.* at PageID 4737.) According to Dr. Carter, the ability to complete those tasks had a value, which was represented in the loss of household services. (*Id.* at PageID 4738.) He opined that having a caregiver prepare food for Frazier was not a substitute for the loss of his ability to perform that activity himself. (*Id.*)

Plaintiffs rely upon *Spotlite Skating Rink, Inc. v. Barnes,* 988 So.2d 364 (Miss. 2008), in support of their argument. In that case, the Mississippi Supreme Court rejected a challenge to Dr. Carter's methodology in calculating the "present net cash value" of the decedent ten-year-

old's life expectancy. *Id.* at 370. However, that case is distinguishable because it was a wrongful death case and did not involve the type of damages which Defendant in the present case alleges are duplicative. In short, *Spotlite* is not helpful in resolving the specific issue presented in this case.

The Court has not found, and Plaintiffs have not cited, any cases where damages for loss of household services were awarded to an injured person. Rather, case law shows that they are typically awarded to a spouse where the injured person or decedent will no longer be able to provide household services, thus, the spouse is compensated for that loss. *See Huskey v. Rhea Cnty.*, No. E2012-02411-COA-R3-CV, 2013 WL 4807038, at *18 (Tenn. Ct. App. Sept. 10, 2013); *Jackson v. Miller*, 776 S.W.2d 115, 116-17 (Tenn. Ct. App. 1989). Indeed, "[l]oss of services is a part of the loss of consortium[.]" *Carter v. United States*, No. 3:11-0930, 2014 WL 1630824, at *17 (M.D. Tenn. Apr. 23, 2014). In the present case, Plaintiffs are seeking compensation for the loss of household services to Frazier himself. But, as Hankook points out, damages in his life care plan provide for the cost of someone to cook, clean, and perform other household chores. In other words, the tasks that he can no longer complete for himself will now be performed by another person, the cost of which is included in the life care plan. The Court agrees that allowing him to recover for both the loss of household services to himself as well as expenses in his life care plan for another person to provide twenty-four hour care would be duplicative and improper. *See* 8 Tenn. Prac. Pattern Jury Instr. T.P.I.—14.01 (2016 ed.) ("You may not duplicate damages for any element by also including that same loss or harm in another element of damage.") Thus, Defendant's motion is GRANTED in this respect.

C. Future Personal Consumption Expenditures

Hankook next contends that future personal consumption expenditures should be deducted from Frazier's lost future earnings. Plaintiffs counter that there are personal expenditures that Frazier may incur that are not included in his life care plan, such as "necessities, comforts, and niceties." (D.E. 210-1 at PageID 4631.) For example, "Frazier may decide[] to purchase certain clothing items, electronics or other things for his home to enjoy. (*Id.*)

According to Defendant, in wrongful death cases, Tennessee law requires that personal consumption expenditures be deducted from an award of damages for lost future earnings. *See Wallace v. Couch*, 642 S.W.2d 141, 143 (Tenn. 1982); *Reed v. PST Vans, Inc.*, 156 F.3d 1231, slip op. at 3 (6th Cir. 1998) (unpublished table decision). Hankook acknowledges that there are no Tennessee cases extending this reasoning to personal injury cases. However, Defendant cites to *Flannery v. United States*, 718 F.2d 108 (4th Cir. 1983), in support of its position. In *Flannery*, the court considered whether a permanently comatose patient could be awarded damages for loss of enjoyment of life. *Id.* at 111. The court reasoned that the plaintiff could not "use the [damages award]," could not "spend it upon necessities or pleasures," and could not "experience the pleasure of giving it away." *Id.* It noted that he had been compensated for the cost of future medical expenses, which would take care of his physical needs. Thus, the court concluded that the award for loss of enjoyment of life would be "compensatory [only] to those relatives who will survive him" and that it constituted a punitive award, which was not allowable under the circumstances of that case. *Id.*

Cone and Frazier correctly point out that, unlike the plaintiff in Flannery, Frazier is not comatose. Plaintiffs aver that there are personal expenses not provided for in the life care plan

8

that Frazier may incur. Neither party has pointed to a list of the specific items included in the life care plan, thus, it is not possible to assess what items may be duplicated with personal expenditures. However, if Cone and Frazier are able to establish that Frazier will incur personal expenditures that are not otherwise provided for in the life care plan, that amount should not be deducted from his claim for lost future earnings. Accordingly, Defendant's motion is DENIED in this respect.

D. Medical Expenses

Defendant next argues that Plaintiffs are only entitled to recover the amounts actually paid for medical expenses rather than the amounts billed. Specifically, Hankook contends that the discounted amount paid by insurance to the provider should be relied upon for calculating medical expenses damages, "not the usually much higher full amount originally charged or *billed* by [Frazier's] medical providers." (D.E. 196-1 at PageID 1832.) Plaintiffs disagree, pointing to recent case law holding that a plaintiff may present evidence that the amount of medical expenses billed or charged is reasonable.

"An injured plaintiff bears the burden of proving that medical expenses the plaintiff is seeking to recover are necessary and reasonable." *Borner v. Autry*, 284 S.W. 3d 216, 218 (Tenn. 2009). Pursuant to Tennessee Code Annotated section 24-5-113(b)(1),

> [i]n any civil action for personal injury brought by an injured party against the person or persons alleged to be responsible for causing the injury, if an itemization of or copies of the medical, hospital or doctor bills which were paid or incurred because of such personal injury are served upon the other parties at least ninety (90) days prior to the date set for trial, there shall be a rebuttable presumption that such medical, hospital or doctor bills are reasonable.

In *West v. Shelby County Healthcare Corporation*, the Tennessee Supreme Court held that, in cases brought pursuant to the Tennessee Hospital Lien Act, Tennessee Code Annotated

9

§§ 29-22-101 to -107, "reasonable charges" for medical services means the charges agreed to by the insurance company and the hospital. 459 S.W.3d 33, 46 (Tenn. 2014). The supreme court based its decision in part on the fact that non-discounted charges did not reflect the amount actually being paid in the market place because insurers generally did not pay the full amount billed. *Id.* at 45. Thus, "[a] more realistic standard is what insurers actually pay and what the hospitals [are] willing to accept." *Id.* (alterations in original) (quoting *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130, 1144 (Cal. 2011)).

Following the supreme court's decision in *West*, several courts in this district considered whether that case's holding applied in personal injury actions. In *Hall v. USF Holland, Incorporated*, the court answered that question in the affirmative, concluding that, as in the hospital lien context, plaintiffs seeking damages in a personal injury action are required to prove that their medical bills are necessary and reasonable. 152 F. Supp. 3d 1037, 1040 (W.D. Tenn. 2016). The court reasoned that "undiscounted hospital bills do not represent the reasonable cost of services provided," thus, the plaintiffs "would not be able to recover the amount stated on those bills." *Id.* at 1040; *see also Smith v. Lopez-Miranda*, 165 F. Supp. 3d 689, 691 (W.D. Tenn. 2016) (holding that, pursuant to *West*, "undiscounted hospital charges do not constitute evidence of 'reasonable and necessary' medical expenses"); *Keltner v. United States*, No. 2:13-cv-2840-STA-dkv, 2015 WL 3688461, at *4 (W.D. Tenn. June 12, 2015) (concluding that non-discounted medical bills were "not an 'expense' because [they] were not 'expended' or even 'incurred'") (citing *Howell*, 257 P.3d at 1138).

Thereafter, in *Dedmon v. Steelman*, the Tennessee Court of Appeals considered whether the holding in *West* applied in personal injury actions. No. W2015-01462-COA-R9-CV, 2016 WL 3219070 (Tenn. Ct. App. June 2, 2016), *perm. app. granted* (Oct. 21, 2016). The court of

appeals acknowledged that trial courts had "reached opposite conclusions as to the impact of *West* on Tennessee tort law." *Id.* at *9. The court also noted that several federal district courts had "interpreted *West* as defining the standard of reasonableness for medical expenses in personal injury litigation." *Id.* (citing *Smith*, 165 F. Supp. at 690-93; *Hall*, 152 F. Supp. 3d at 1041; *Keltner*, 2015 WL 3688461, at *3-5). Nevertheless, the *Dedmon* court concluded that *West*'s holding did not apply outside the context of cases brought under the Tennessee Hospital Lien Act. *Id.*

Applying existing Tennessee law, the court found that "[d]amages in personal injury cases are not measured by 'fixed rules of law' but rest[] largely in the discretion of the trier of fact." *Id.* at *10 (alteration in original) (quoting *Roberts v. Davis*, No. M2000-01974-COA-R3-CV, 2001 WL 921903, at * 4 (Tenn. Ct. App. Aug. 7, 2001)). It noted that in *West*, the supreme court specifically held that "[the hospital's] non-discounted charges . . . should not be considered reasonable charges *for the purpose of* Tenn. Code Ann. § 29-22[-]101(a)[.]" *Id.* at *9 (alteration in original) (quoting *West*, 459 S.W.3d at 44). Therefore, the court of appeals concluded that

> under the law as it presently exists in Tennessee, a plaintiff may present the testimony of a physician who testifies that the amount of medical expenses billed or charged to a plaintiff was reasonable. . . . [E]xisting law in this state also makes clear that [d]efendants are permitted to offer proof contradicting the reasonableness of the medical expenses.

*Id.* at *11. The Tennessee Supreme Court is currently reviewing *Dedmon* but has yet to issue an opinion.

Since the *Dedmon* decision, two more courts in this district have revisited the issue of whether *West* applies in personal injury cases. In *Boettcher v. Shelter Mutual Insurance Company*, the court concluded that *Dedmon* was dispositive and that *West* did not preclude a plaintiff from presented undiscounted medical bills to the jury in a personal injury case. No.

11

2:14-cv-02796-JPM-dkv, 2016 WL 3212184, at *3 (W.D. Tenn. June 8, 2016). The court reasoned that *Keltner*, *Hall*, and *Smith* were inconsistent with the more recent *Dedmon* decision. *Id.* According to the court, those opinions also failed to appreciate the presumption of reasonableness provided to plaintiffs pursuant to Tennessee Code Annotated section 24-5-113(b)(1). *Id.*

Most recently, in *Johnson v. Trans-Carriers, Incorporated*, another court in this district concluded that, although *Dedmon* could not be ignored, it was more likely that the Tennessee Supreme Court would extend its holding in *West* beyond the hospital lien context. No. 2:15-cv-2533-STA-dkv, 2017 WL 28004, at *3 (W.D. Tenn. Jan. 3, 2017). Like earlier courts to apply *West* in personal injury cases, the *Johnson* court defined the "necessary and reasonable" medical expenses as the amounts actually paid by the plaintiff's insurance company. *Id.*

This Court finds the reasoning in *Keltner*, *Hall*, *Smith*, and *Johnson* persuasive, and agrees with the *Johnson* court that, upon review of the *Dedmon* decision, the Tennessee Supreme Court is likely to hold that an injured plaintiff's non-discounted medical bills do not represent necessary and reasonable medical expenses in personal injury actions. *See Hartford Fire Ins. Co. v. Lawrence*, 740 F.2d 1362, 1365 (6th Cir. 1984) ("[I]f the state's highest court has not spoken to the question in controversy, the federal court must discern how the state courts would respond if confronted with the question.") (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). This court finds it unlikely that the Tennessee Supreme Court will apply inconsistent meanings of "necessary and reasonable" medical expenses in different types of tort cases. Therefore, Frazier is entitled to recover the amount of medical bills that he incurred, and the Court concludes that the amounts actually paid by the insurer are the necessary and reasonable

12

expenses, not the non-discounted amounts billed.  Defendant's motion is GRANTED on this ground.

### III.  CONCLUSION

Based on the foregoing and the record as a whole, Hankook's motion for summary judgment is GRANTED in part and DENIED in part.  Plaintiffs will be required to present a life care plan calculated with Frazier's post-accident life expectancy in accordance with the experts opinions and may not seek damages for Frazier's loss of household services to himself.  However, Plaintiffs may present evidence that Frazier will incur personal expenditures not provided for in the life care plan.  Further, Defendant's motion to limit Plaintiffs' proof of medical expenses to the discounted amounts is GRANTED.

**IT IS SO ORDERED** this 25th day of January 2017.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE