# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| LISA C. CONE, Attorney-in-Fact and Next Friend of TIMOTHY H. L. FRAZIER, and TIMOTHY H. L. FRAZIER, Individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 14-1122-STA-egb |
| HANKOOK TIRE COMPANY, LTD., | ) ) | |
| Defendant. | ) ) | |

## ORDER ON SHOW CAUSE HEARING

Before the Court is a Show Cause Response filed by Defendant Hankook Tire Company, Ltd. and its counsel of record (ECF No. 376) on August 4, 2017. The Court ordered Defendant and counsel to show cause as to why the Court should not hold counsel in contempt of court and impose a full range of sanctions for counsel's failure to comply with the Local Rules. The Court held a show cause hearing on August 8, 2017, and heard statements from attorney Christopher Campbell. For the reasons set forth below, the Court does not hold counsel in contempt, though the Court finds cause to order other appropriate relief.

## BACKGROUND

The Court described the circumstances that brought Defendant and its counsel before the Court in its order to show cause. Following a two-week trial, the jury returned a verdict in favor of Defendant on June 30, 2017. The Clerk of Court thereafter received a report that a "jury

1

researcher" had contacted jurors from the recently concluded trial of the case. A member of the jury informed the Clerk of Court that an individual named Ray Fuentes of Cumming, Georgia, had come to the juror's home and attempted to speak with the juror about the case. The juror contacted other members of the jury and confirmed that Fuentes had approached them as well. The Court entered an order on July 20, 2017, directing counsel for the parties to provide the Court with any information they had about the "jury researcher."

On July 24, 2017, Defendant Hankook Tire Company, Ltd. filed its statement (ECF No. 365) in response to the Court's order, confirming that counsel for Defendant had hired Ray Fuentes to advise Defendant "on aspects of its trial preparation and strategy." One of Defendant's attorneys of record, Christopher Campbell, had asked Fuentes to contact jurors "to discuss their impressions and opinions of the case and the parties' trial presentations." According to the statement, Campbell was not aware of the Local Rule prohibiting contact with jurors, even though Campbell affirmed in his motion for leave to appear *pro hac vice* (ECF No. 223) that he had familiarized himself with the Court's Local Rules and agreed to be bound by them. Before the Court's July 20 order, Defendant's other counsel of record had no knowledge that Campbell had asked Fuentes to contact jurors. Lead trial counsel immediately contacted Fuentes and directed him not to make any further contact with jurors in the case. All of Defendant's counsel of record extended an apology to the Court and offered to provide the Court with any additional information the Court might require. Based on the statement from Defendant and counsel, the Court ordered all of Defendant's counsel of record to show cause cause as to why the Court should not hold counsel in contempt for counsel's role in directing Fuentes to contact jurors in violation of Local Rules.

In their written show cause response, Defendant and counsel have extended an apology to the Court and assured the Court that they had the highest respect for the Court and its rules. Counsel Christopher Campbell has assumed full responsibility for the violation of the Local Rules and affirmed that no other counsel bears any responsibility. Each of Defendant's attorneys as well as Ray Fuentes, the jury researcher, appeared at the hearing and also submitted declarations attesting to the facts reported in their show cause response. Mr. Campbell asserts that his violation of the Local Rule prohibiting contact with jurors was inadvertent and not intentional. In his declaration, Campbell states that his decision to instruct Fuentes to contact the jurors was the result of a series of mistaken assumptions. Campbell explains that on Friday, June 30, 2017, he left court before the jury returned its verdict. In Campbell's experience, attorneys for the prevailing party generally seek permission from the presiding judge to question the jury about the verdict. Campbell mistakenly assumed that Defendant's other trial counsel had requested permission to speak with the jurors at the conclusion of the trial.

According to Campbell's declaration, on June 27, 2017, prior to the conclusion of the trial, his firm DLA Piper suffered a cyber attack, disabling the firm's email. Campbell's email was restored on Monday, July 3, 2017. That morning Campbell emailed Ray and Rick Fuentes who had assisted Defendant in jury selection, informing them that Defendant had obtained a favorable verdict and thanking them for their assistance. Campbell copied one of Defendant's other attorneys Steven Har on the email. Ray Fuentes responded to Campbell's email later that day and asked whether counsel had spoken to the jurors after the trial or whether counsel wanted Fuentes to contact the jurors. Har was copied on Fuentes's response. On July 5, 2017, Campbell answered Fuentes's email and instructed him to proceed with contacting the jurors unless Mr.

Har disagreed. Campbell stated in his declaration that he mistakenly assumed that Defendant's other attorneys had already addressed juror interviews with the Court and that Har would inform him if the Court had denied counsel's request to speak with the jurors.

The show cause response goes on to state that Har never saw Campbell's emails. Har had traveled to South Korea the day after the trial concluded, and his email was not restored from the June cyber attack until some time later. As a result, Har was not aware of Campbell's emails about questioning the jurors until the Court issued its first order addressing improper jury contact on July 20, 2017. Har states in a declaration that if he had seen Campbell's emails, he "would have likely responded that the issue of contacting the jurors did not come up after the verdict was returned and that Mr. Campbell should reach out to the other Defendant's attorneys, Scott Ross or Joel Dewey, about seeking permission to contact jurors." Campbell and Fuentes mistakenly assumed from Har's lack of a response that there was no reason not to contact the jurors. The Court would add that Campbell apparently never questioned whether Har had in fact received the email and that Campbell never contacted any of Defendant's other counsel who had been present through the conclusion of the trial.

Fuentes proceeded to contact the jurors. Fuentes states in his declaration that he spoke with three of the eight jurors between July 19 and 20, 2017. Juror 5 spoke with Fuentes for 20 minutes, Juror 3 for 45 minutes, and Juror 6 for between 30 and 45 minutes. According to Fuentes, each juror was amicable and spoke voluntarily with Fuentes. Fuentes spoke briefly with Juror 1's parents after going to their home by mistake. Fuentes did not speak with any of the other jurors but left his business card and a note at each of their residences. Upon receipt of the Court's July 20, 2017 order, counsel for Defendant Scott Ross called Fuentes and directed him to

cease attempts to communicate with the jurors. By that time Fuentes was at the Memphis airport on his way home. Fuentes did later receive an email from Juror 1 stating that he did not wish to talk about the case. Fuentes has not shared with Defendant or its attorneys any of the information he gathered during his conversations with the jurors.

## **STANDARD OF REVIEW**

"Federal courts have broad contempt power, which exists for the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts." *Brown v. City of Upper Arlington*, 637 F.3d 668, 671 (6th Cir. 2011) (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987)). Contempt of court is a "weapon" in a court's "arsenal" to ensure compliance with an order or judgment of the court. *Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378-79 (6th Cir. 2003). The Supreme Court has described the power "to punish for contempts" as "a necessary and integral part of the independence of the judiciary" and "absolutely essential to the performance of the duties imposed on them by law." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911).

Contempt proceedings can be either civil in nature or criminal. Civil contempt has as its purpose compelling a party to do "what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011) (quoting *Gompers*, 221 U.S. at 442). Criminal contempt is penal in nature and authorizes a court to impose fines and imprisonment for "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). In other words, "a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant" and criminal if it is "punitive, to vindicate the authority of the court." *Int'l Union,*

5

*United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994). In order to establish criminal contempt, a defendant must have "(1) had notice of a reasonably specific court order, (2) disobeyed it, and (3) acted with intent or willfulness in doing so." *United States v. Hendrickson*, 822 F.3d 812, 820 (6th Cir. 2016).

## **ANALYSIS**

The Court does not find Mr. Campbell to be in contempt of court. As the Court established in its previous orders, a serious violation of the Local Rules of Court occurred in this case. Local Rule 47.1(e) prohibits any party, attorney, or representative of either from contacting jurors after a verdict was rendered, unless the party or attorney first obtains permission from the Court. Mr. Fuentes acting on behalf of Defendant and at the direction of Mr. Campbell contacted the jurors in this case but without permission from the Court. Mr. Campbell and Mr. Fuentes are in violation of Local Rule 47.1(e). The Court must stress here the shock and dismay of at least one of the jurors whom Mr. Fuentes attempted to question. The juror expressed to the Clerk of Court surprise and concern about what the juror perceived as an invasion of privacy. The Court takes these concerns seriously and in no way condones or excuses the violation of the Local Rules that occurred in this case.

The Court finds that Mr. Campbell failed to act with due care in this instance. Mr. Campbell's explanation for his violation of the Local Rules rests on a series of questionable assumptions on his part, most notably his inference that the Court had granted the parties permission to contact jurors based on nothing other than Mr. Har's failure to respond to a single email at a time when counsel's firm had experienced a disruption of its email service. When Mr. Campbell did not receive a response from Mr. Har, Mr. Campbell never attempted to contact

6

other co-counsel to address to them the same question he had posed to Mr. Har. Mr. Campbell offered no explanation for his failure to take this very simple step. And despite the obvious significance of Mr. Campbell's emails and his heavy reliance on the sequence and content of the emails, Campbell has not produced any of the emails referenced in his declaration.

Moreover, the Court is troubled by the inconsistency in Mr. Campbell's representations to the Court about his understanding of the Local Rules. In its opening statement, Defendant represented to the Court that "Mr. Campbell did not know that there was a local rule prohibiting such contact without prior court approval." Def.'s Statement Concerning Post-Verdict Interviews 1 (ECF No. 365). But Mr. Campbell took a markedly different position in the show cause response, stating not that he was unaware of the Local Rule but that he wrongly assumed that co-counsel had sought permission from the Court to contact jurors. Mr. Campbell's attempt to square the inconsistency of these statements at the show cause hearing was not entirely convincing.

However, the Court credits the explanation offered by Defendant and its attorneys of record that the violation of the Local Rules was not culpable. Mr. Campbell was the only attorney for Defendant with knowledge of Mr. Fuentes's activities, and Mr. Campbell was the attorney who wrongly assumed that contact with jurors was permitted in this case. While the Court finds that Mr. Campbell's conduct was negligent, the Court does not find that Mr. Campbell acted intentionally or with disregard for the Local Rules. A finding of contempt is therefore unwarranted.

Although Mr. Campbell's conduct does not rise to the level of contempt, the Court finds cause to take other action for Mr. Campbell's violation of the Local Rules. First, Mr. Campbell

7

is ordered to prepare a letter of apology addressed to the members of the jury. The letter should set forth the following facts: (1) that Mr. Campbell is one of the attorneys for Defendant; (2) that Mr. Campbell instructed Mr. Fuentes to contact the jurors; (3) that the Local Rules of the Court do not allow parties or attorneys or their representatives to contact jurors after a trial, unless they receive permission from the Court; (4) that Defendant did not request such permission and the Court did not grant it in this case; (5) that neither Mr. Campbell nor Mr. Fuentes received the jurors' contact information from the Court; and (6) that Mr. Fuentes will not contact the jurors further and that he will not share with Defendant or any of its attorneys the information he received from the jurors. Mr. Campbell should prepare and overnight the letters to the Clerk of Court within 7 days of the entry of this order. The Clerk of Court will then send the letters to each juror under a cover letter from the Clerk.

Second, the Court hereby rescinds Mr. Campbell's special permission to participate in this case *pro hac vice*. Local Rule 83.4(d)(1) permits an attorney to participate in a particular case under specific conditions, among them that the attorney certifies that he or she "subjects himself or herself to the jurisdiction of the Court and has obtained, is familiar with and agrees to be bound by these Local Rules . . . ." Local Rule 83.4(d)(3) goes on to state that an attorney's failure to comply with the Local Rules or any other misconduct "shall be grounds for rescinding an order of special admission." Mr. Campbell filed a motion for leave to appear *pro hac vice* (ECF No. 223) on July 6, 2016, certifying that he subjected himself to the jurisdiction of the Court and agreed to be bound by the Local Rules. The Court finds that Mr. Campbell's violation of Local Rule 47.1(e) justifies rescinding his permission to participate in this case *pro hac vice*. Therefore, Mr. Campbell's admission *pro hac vice* is hereby rescinded.

Finally, Defendant and counsel have shown that Mr. Fuentes has not communicated to them any of the information he obtained from the jurors he had the opportunity to question. Defendant and counsel for Defendant are permanently enjoined from receiving information collected by Mr. Fuentes from jurors during his interviews on July 19 and 20, 2017.

## **CONCLUSION**

The Court accepts the show cause response from Defendant and its attorneys of record. The Court does not find counsel, including Mr. Campbell, to be in contempt of court. The Court does find cause to order Mr. Campbell to prepare a formal letter of apology to the members of the jury. The Court also finds cause to rescind Mr. Campbell's permission to participate *pro hac vice* in this case. All counsel are permanently enjoined from receiving the information collected by Mr. Fuentes from jurors during his interview on July 19 and 20, 2017.

**IT IS SO ORDERED.**

                                        s/ S. Thomas Anderson
                                        S. THOMAS ANDERSON
                                        CHIEF UNITED STATES DISTRICT JUDGE

                                        Date:  August 10, 2017.